IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

CHRISTOPHER ELLIS, ROBERT SCHMITZ,                                PLAINTIFFS
and GREGORY SURBECK, on behalf of
themselves and all others similarly situated

V.                                                            CIVIL ACTION NO. 3:18-CV-73-SA-JMV

BAPTIST MEMORIAL HEALTH CARE
CORPORATION                                                               DEFENDANT

ORDER AND MEMORANDUM OPINION

Christopher Ellis, Robert Schmitz, and Gregory Surbeck, on behalf of themselves and all others similarly situated, filed their Complaint [1] against Baptist Memorial Health Care Corporation in this Court on March 26, 2018, alleging violations of the Fair Labor Standards Act. Now before the Court is the Defendant's Motion [140] for Summary Judgment. The issues are fully briefed and are ripe for review.

*Factual and Procedural Background*

The named Plaintiffs were formerly employed by the Defendant at its Oxford, Mississippi location from January 2015 through November 2017.[1] They operated as emergency medical teams consisting of a combination of emergency medical service drivers, emergency medical technicians, and paramedics. The Plaintiffs generally worked either two 24 -hour shifts per workweek or four 12-hour shift per workweek. Regardless of the specific shifts the Plaintiffs worked, they allege that the Defendant failed to compensate them for the total 48 hours worked each week. Therefore, they

---

[1] The Plaintiffs' employment ended once the Defendant began contracting with a third party to obtain the services previously provided by the Plaintiffs.

argue that they were not properly paid for the overtime hours they worked during the relevant time period, allegedly in violation of the FLSA.[2]

On April 5, 2018, the Plaintiffs filed a Motion [6] for conditional certification of the collective action, asserting that the Defendant maintains an unlawful policy of refusing to compensate the Plaintiffs for certain overtime hours unless the Plaintiffs show they were out on a call, in the ambulance, or performing some other job duty described by the Defendant because the Defendant characterizes the unpaid hours as "downtime." The Plaintiffs claim they were often discouraged from challenging or requesting the payment of certain hours. On February 27, 2019, this Court entered an Order [41] conditionally certifying this case as a collective action. The Court then entered a supplemental Order [48] approving the Plaintiffs' notice form and allowing them to notify potential opt-in Plaintiffs. Opt-in Plaintiffs were then found at the Defendant's Oxford, New Albany, Calhoun City, and Columbus locations. Through the present Motion [140], the Defendant seeks summary judgment, specifically requesting that this Court find that the Plaintiffs are not entitled to overtime pay based on the Motor Carrier Act exemption.

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of

---

[2] The backpay calculations will differ for each Plaintiff only because of the specific schedules and hours worked, the amount of any other overtime compensation the Defendant has paid, and the regular rate and overtime pay for the Plaintiffs. The Plaintiffs include the following information in their Complaint [1]: Christopher Ellis was employed as an emergency medical technician for five years with an hourly rate of $12.50 per hour. Robert Schmitz was employed as a paramedic for five years with an hourly rate of $23.22 per hour. Gregory Surbeck was employed as a paramedic for three years with an hourly rate of $16.97 per hour.

2

an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the Court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (internal citations omitted).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted). "Mere 'conclusory allegations, speculation, [or] unsubstantiated assertions are inadequate to satisfy the nonmovant's burden.'" *Pree v. Washington County Board of Supervisors*, 2018 WL 522776 at *6 (N.D. Miss. Jan. 23, 2018) (citing *Chen v. Ochsner Clinic Foundation*, 630 Fed. Appx. 218, 222-23 (5th Cir. 2015) (citing *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996)).

*Analysis and Discussion*

The Plaintiffs aver that the Defendant violated the Fair Labor Standards Act by failing to pay the Plaintiffs their proper compensation of time and a half for all work done in excess of their forty-hour workweeks as is required under that Act. *See* 29 U.S.C. § 207 (a)(1). However, the

Defendant contends that the Motor Carrier Act exemption applies and precludes the Plaintiffs' FLSA claim.

Under the MCA exemption, "[t]he provisions of section 207 of this title shall not apply with respect to – (1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). Further, the Secretary of Transportation has jurisdiction "over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier – (1) between a place in – (A) a State and a place in another State; and … (2) … on a public highway." 49 U.S.C. § 13501(1)(A), (2).

The Department of Labor and the Department of Transportation were intended to have two distinct, separate jurisdictions under their related acts – the FLSA and the MCA, respectively – such that their jurisdictions would not overlap. *Smith v. F-M Ambulance Service, Inc.*, 914 F. Supp. 359, 361 (D. N.D. 1995) (citing *Morris v. McComb*, 332 U.S. 422, 437-38, 68 S. Ct. 131, 138, 92 L. Ed. 44 (1947)). The MCA exemption helps to maintain this separation and will exist as long as the Secretary of Transportation has authority to regulate certain employees. *Id.* (citing *Morris*, 322 U.S. at 434, 68 S. Ct. at 137)).

The Defendant argues that the Plaintiffs fall under the jurisdiction of the Department of Transportation as opposed to the Department of Labor, based on the language of the MCA exemption, because they transported patients on public highways and in interstate commerce. Additionally, the Defendant argues that the Department of Transportation's administrative rulings and/or regulations, are only to be applied when Congress's language is ambiguous which, the Defendant argues, is not the case here. Thus, the issues before this Court are: (1) whether the MCA

4

exemption should be applied in this case; and (2) whether this Court should grant any deference to the Department of Transportation's administrative rulings and/or regulations in making its determination.

Arguing that the MCA exemption applies, the Defendant relies in large part on the reasoning in *Benson*, where the Sixth Circuit found that "[s]ince the [Motor Carrier Act] exemption is phrased in terms of 'power to regulate,' the fact that the Secretary of Transportation has not actually attempted to regulate appellant or other ambulance services specifically is not significant in determining whether the Motor Carriers Act (sic) contemplates such regulation." *Benson v. Universal Ambulance Service, Inc.*, 675 F.2d 783, 785 (6th Cir. 1982) (citing *Morris*, 332 U.S. 422, 68 S. Ct. 131). In other words, the Defendant argues that even if the Secretary of Transportation chooses not to practice its authority over ambulance services, the statute only requires the Secretary of Transportation to have power to so regulate and that having the ability to make such a choice shows that the Secretary of Transportation still has the ultimate authority to regulate ambulance services.

The Plaintiffs rely on decisions from the Ninth and Eleventh Circuits, which, more recently than the Sixth Circuit decision, addressed this same issue and determined that the MCA exemption does not apply to ambulance workers. The Ninth Circuit found in *Jones* that the Secretary of Transportation adopted the administrative decision of the Interstate Commerce Commission (now, and hereinafter referred to as, the Department of Transportation) in *Lonnie W. Dennis*, consequently making the FLSA the applicable law for ambulance workers' overtime claims. *Jones v. Giles*, 741 F.2d 245, 249 (9th Cir. 1984) (citing *Lonnie W. Dennis*, 63 M.C.C. 66, 70 (1954); 40 Fed. Reg. 50,677 (1975); 42 Fed. Reg. 60,080 (1977)). Both the Ninth and Eleventh Circuits have relied on *Dennis*, wherein the Department of Transportation determined that ambulance services

5

were not meant to fall under the authority of the Interstate Commerce Act. *Lonnie W. Dennis*, 63 M.C.C. 66. In *Dennis*, the Department of Transportation focused its analysis on public policy reasons, specifically that ambulances need to be able to take whatever paths necessary, regardless of any operating restrictions, in order to work during emergency situations. *Id*. at 70. The Department of Transportation held, "[w]e, therefore, are of the opinion that the Interstate Commerce Act was not intended to confer jurisdiction upon this Commission to regulate the operation of carriers transporting corpses or operating an ambulance service in interstate or foreign commerce." *Id*.

The Ninth Circuit was ultimately unpersuaded by the Sixth Circuit's decision in *Benson*. In *Benson*, the Sixth Circuit relied on *Duffy*, a case from the District Court of the Western District of Michigan. The Ninth Circuit found that this reliance on *Duffy* was unfounded as *Duffy* held that it is the FLSA, not the MCA, that applies to ambulance services. *Id*. (citing *Benson*, 675 F.2d at 786 (quoting *Duffy v. Oele*, 274 F. Supp. 307, 311 (W.D. Mich. 1967))). The Ninth Circuit in *Jones* went on to opine "[w]e do not believe that the Motor Carriers Act (sic), rather than the FLSA, applies to ambulance services. We also note that the Eighth Circuit has implied that the FLSA applies to ambulance services. Thus, we hold that ambulance services are not subject to the Motor Carriers Act (sic)." *Id*. at 250 (citing *Mitchell v. Williams*, 420 F.2d 67 (8th Cir. 1969)). As a result, the Ninth Circuit in *Jones* found that although it is the Department of Transportation's responsibility as opposed to the Department of Labor's responsibility to interpret MCA exemptions, "[o]nce a certificate of exemption is in existence, the carrier is removed from MCA jurisdiction until the certificate is revoked or conditioned." *Id*. at 249 (internal citations omitted). In other words, once the Department of Transportation makes a determination that a particular carrier does not fall within its control, that determination remains in place until the Department of

6

Transportation reverses course on that issue. The Defendant argues that the fact that the Department of Transportation can reinstate authority, either because a condition in a certificate so allows or by revoking a certificate, supports its claim that the Secretary of Transportation still has ultimate authority over ambulance workers.

The Eleventh Circuit, however, also distinguished the *Benson* holding and explained its reasoning as follows:

> In light of the Department of Transportation's long practical experience in this field, we agree with its analysis in *Lonnie W. Dennis* that Congress did not intend the jurisdiction of the Motor Carrier Act to extend to the provision of transportation for ambulance services. We note that the Ninth Circuit in *Jones v. Giles* reasoned along the same lines in concluding that a privately owned ambulance and paramedic service did not fall within the section 13(b)(1) exemption. The *Jones* court specifically distinguished the reasoning of *Benson v. Universal Ambulance Serv., Inc.* in which the Sixth Circuit held that a private ambulance service was subject to the jurisdiction of the Motor Carrier Act and that its employees therefore could not have the benefit of the overtime provisions of section 7(a). We believe that not only did the Sixth Circuit misconstrue the structure of the Motor Carrier Act in reaching this conclusion for the reasons noted by the Ninth Circuit, it also did not consider the Department of Transportation's own interpretation of the Act as applied to ambulance services.

*Spires v. Ben Hill County*, 980 F.2d 683, 687 (11th Cir. 1993) (citing *Jones*, 741 F.2d 245; *Benson*, 675 F.2d 783) (additional citations omitted).

Additionally, after *Benson* was decided, the Department of Transportation's Federal Highway Administration adopted a regulation providing that "[t]he transportation of human corpses or sick and injured persons" is not subject to the Motor Carrier Act. 49 C.F.R. § 390.3(f)(4) (1998). In a decision issued shortly after the regulation was adopted, the District Court for the Northern District of Ohio determined that the regulation contradicted the Sixth Circuit's decision in *Benson. Trocheck v. Pellin Emergency Medical Service, Inc.*, 61 F. Supp. 2d 685, 691 (N.D.

Ohio 1999). As a result, the Ohio district court gave deference to the regulation in making its determination regarding the inapplicability of the MCA. *Id*. at 691-92 (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 862-65, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984); *Sharondale Corp. v. Ross*, 42 F.3d 993, 998 (6th Cir. 1994); *Benson*, 675 F.2d 783).

Ultimately, the District Court for the Northern District of Ohio relied on prior case law in various circuits in holding that the MCA does not apply to ambulance workers. *Id*. at 692 (citing *Spires*, 980 F.2d at 687 ("Congress did not intend the jurisdiction of the Motor Carrier Act to extend to the provision of transportation for ambulance services."); *Jones*, 741 F.2d at 250 ("[W]e hold that ambulance services are not subject to the Motor Carriers Act (sic), and are therefore subject to the FLSA[.]"); *Bayles v. American Medical Response of Colorado, Inc.*, 937 F. Supp. 1477, 1484 (D. Colo. 1996) (holding that the regulation exempting transportation of human corpses or sick and injured persons from coverage under the Motor Carrier Act (MCA) exempted an ambulance service from all requirements of the MCA, so that an ambulance service was subject to the FLSA and did not fall within the "motor carrier exemption"); *Smith*, 914 F. Supp. at 362 ("[A]mbulance services are not subject to the Department of Transportation's jurisdiction under the Motor Carrier Act. Therefore, because F-M Ambulance is not entitled to an exemption under 29 U.S.C. § 213(b)(1), it is subject to the provisions of the FLSA, including overtime compensation.")). *See also Byers v. Care Transport Inc.*, 2015 WL 5608287 at *8, n. 12 (E.D. Mich. September 24, 2015) ("Plaintiff urges the Court to extend this reasoning [that vehicles involved in the transportation of human corpses should be exempt from the Secretary of Transportation's regulation] to [the defendant's] business, despite the fact that it is unquestionably different in nature from an emergency ambulance service, which can provide medical care in

8

addition to transportation and requires the freedom of flexible emergency transportation. The Court declines to make such an extension.").

Although the Defendant argues that the statutes in this case are clear in giving the Department of Transportation authority over ambulance services, the case law cited above does not support that contention. In fact, courts have interpreted the statutes and regulations to determine that the MCA was not intended to extend to ambulance services. Further, when there is any ambiguity, it is the Court's goal to follow Congress's intent, "as we presume 'that Congress, when it left ambiguity in a statute administered by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows.'" *Contender Farms, L.L.P. v. U.S. Dept. of Agriculture*, 779 F.3d 258, 268 (5th Cir. 2015) (quoting *City of Arlington, Tex. v. Federal Communications Commission,* 569 U.S. 290, 296, 133 S. Ct. 1863, 1868, 185 L. Ed. 2d 941 (2013)). This Court is of the opinion that were there no ambiguities in Congress's intent in the MCA and FLSA and how those statutes relate to ambulance services, then there would not be a number of cases, as were cited above, that found contrary to the Defendant's argument. Stated differently, the Court rejects the Defendant's assertion that the statutes themselves are unambiguous.

As such, this Court will now turn to the Defendant's second argument: whether deference should be granted to administrative regulations and/or rulings when interpreting the pertinent statutes in this case.

In making this argument, the Defendant asserts that the *Spires* and *Jones* courts erroneously relied on *Lonnie W. Dennis*, claiming that *Dennis* itself was wrongly decided, did not cite to any intervening congressional action or statutory text for its decision, and relied on practical and policy

9

reasons for its decision when Congress had already made a public policy decision to grant the Department of Transportation jurisdiction to regulate ambulance services. Specifically, the Defendant argues that both *Spires* and *Jones* were incorrect in finding that the Department of Transportation specifically chose to adopt the *Dennis* holding. Further, the Defendant argues that Congress was clear in the MCA that it intended for the Department of Transportation, not the Department of Labor, to have authority over ambulance services because, as the Defendant argues, these services affect interstate commerce. The Defendant has made that conclusion the crux of its argument: Congress was clear in the MCA – motor carriers of which a substantial part of their work affects interstate commerce, fall under the MCA as opposed to the FLSA. The Defendant further asserts that when Congress is clear, little deference should be given to any regulatory authority.

The Defendant persists that any regulations or administrative decisions, including the *Dennis* decision and 49 C.F.R. § 390.3(f)(4), a codified federal regulation which states, "[u]nless otherwise specifically provided, the rules of this subchapter do not apply to – [t]he transportation of human corpses or sick and injured persons," carry no weight here because it is Congress, not the administrative bodies themselves, that determines the administrative body's jurisdiction. This argument, however, is overly generalized and misses the mark.

This Court acknowledges the general proposition that statutes are more authoritative than regulations and/or administrative rulings. *See Dhuka v. Holder*, 716 F.3d 149, 154 (5th Cir. 2013) (citing *Chevron*, 467 U.S. at 842, 104 S. Ct. 2778) ("Deciding whether deference is due begins with an examination of whether there is ambiguity in the statute; if there is, the agency's explanation must be a reasonable one."). However, the Court finds that the Defendant's contention here – specifically, that the pertinent statutes are unambiguous and, therefore, that no discretion

10

should be given to the Department of Transportation – misses the mark. In fact, this contention runs directly contrary to previous judicial decisions which have specifically acknowledged the ambiguity in the MCA. The District Court of North Dakota addressed the ambiguities in the relevant statutes in this case when it reasoned:

> In light of the Department of Transportation's long practical experience in this field and the fact that Congress has chosen not to disturb the Department's longstanding interpretation of the statute, the court agrees with the analysis and conclusion of *Lonnie W. Dennis* that Congress did not intend the jurisdiction of the Motor Carrier Act to extend to coverage of ambulance services. The court agrees with the Ninth and Eleventh Circuits and holds that ambulance services are not subject to the Department of Transportation's jurisdiction under the Motor Carrier Act…. The court is mindful of the April 29, 1991 letter form the Secretary of Transportation, Samuel K. Skinner, to the Honorable Byron L. Dorgan, Untied States House of Representatives, in which he expresses the view that ambulance drivers fall within the FLSA exception. While the court gives considerable deference to agency determinations, the letter is not entitled to the force and effect of law as it cannot be equated with other interpretations by the Department of Transportation or its agencies. The letter may be relevant at some future time in determining possible liquidated damages under the FLSA.

*Smith*, 914 F. Supp. at 362.

As previously noted, this Court finds that the relevant statutes in this case are ambiguous. As a result, this Court will consider the Department of Transportation's regulations in addition to the statutes in order to arrive at its ultimate decision. *See Bayles*, 937 F. Supp. at 1485 ("The regulations, history and purpose of the MCA read *in pari materia* point to the conclusion that ambulance services are not subject to the MCA.")

Although the Defendant argues that the Department of Transportation has authority over ambulance services despite its decision not to exercise such authority, this Court finds, as have other courts, that *Spires* and *Jones* did not misplace their reliance on *Dennis*. Rather, those cases

11

acknowledged the Department of Transportation's decision to allow the Department of Labor to regulate ambulance services as opposed to extending its own authority to ambulance services. While the Department of Transportation might be able to transfer the power to regulate ambulance services back to itself, this Court will give deference to the Secretary of Transportation's currently binding interpretation of the MCA as it relates to its own jurisdiction. *See Jones*, 741 F.2d at 249 (internal citation omitted) ("Once a certificate of exemption is in existence, the carrier is removed from MCA jurisdiction until the certificate is revoked or conditioned."). As a result, such services fall under the Department of Labor, and the FLSA is applicable in this case.[3]

Nevertheless, even if the Court accepted the Defendant's argument, summary judgment would still be improper. Ultimately, the Sixth Circuit in *Benson*, the case upon which the Defendant most heavily relies, did not reach a finding as to whether all the particular plaintiffs in that case fell under the Department of Transportation's or Department of Labor's authority. *Benson*, 675 F.2d at 786-87. Instead, the Court remanded the case for further fact-finding to determine whether the MCA was applicable, specifically, as to whether "'a substantial part' of the activities of the individual employee affect safety of operation in interstate commerce." *Id*. (quoting 29 U.S.C. § 207; citing *Pyramid Motor Corp. v. Ispass*, 330 U.S. 695, 67 S. Ct. 954, 91 L. Ed. 1184 (1947)). The Sixth Circuit noted in *Benson*, that in order for the MCA to apply, a party must show more than the fact that the employer has a blanket "substantial effect on interstate commerce." *Id*. at 786. Instead, a party must show that the employer is "(1) a carrier (2) in interstate commerce." *Id*. In reaching this conclusion, the *Benson* court relied on previous case law which

---

[3] The Court also finds telling the fact that Congress has not intervened in any way by amending the applicable statutes. In other words, the Court finds Congress's failure to act in this field indicative of its intent.

stated that "[a]mbulance service is traditionally considered a part of the transportation industry." *Id.* (quoting *Duffy*, 274 F. Supp. at 311).[4]

Therefore, even if this Court would have found the statutes in this case to be unambiguous, the question would have then become whether the Defendant has provided enough information to show that a substantial part of the Plaintiffs' work affected interstate commerce such that the MCA exemption would not apply. Like the *Benson* court, this Court finds that whether a substantial part of the Plaintiffs' work affected interstate commerce is a question for the jury and cannot be determined at the summary judgment stage based upon the evidence presented by the Defendant through its Motion.

*Conclusion*

For the reasons fully discussed above, the Defendant's Motion for Summary Judgment [140] is DENIED. It is SO ORDERED on this 27th day of January, 2021.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE

---

[4] While the *Duffy* court stated that ambulance services are traditionally a part of the transportation industry, the court in that case came to the ultimate decision that Congress chose not to exempt ambulance services from the FLSA and that, as a result, the FLSA was applicable in that case. This Court also notes that, although the Defendant in this case makes the argument that little deference should be given to regulatory authorities, the *Duffy* court relied on Opinion Letters from the Wage and Hour Administrator in arriving at its decision that ambulance services are part of the transportation industry. *See Duffy*, 274 F. Supp. at 311. Thus, by relying on *Benson* and its reference to *Duffy* earlier, the Defendant relied on case law that has not only acknowledged regulatory authorities but has also granted them great deference in arriving at its ultimate conclusions.

13