IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

CHRISTOPHER ELLIS, ROBERT SCHMITZ,                                        PLAINTIFFS
and GREGORY SURBECK, on behalf of
themselves and all others similarly situated

V.                                                CIVIL ACTION NO. 3:18-CV-73-SA-JMV

BAPTIST MEMORIAL HEALTH CARE
CORPORATION                                                                DEFENDANT

ORDER AND MEMORANDUM OPINION

Christopher Ellis, Robert Schmitz, and Gregory Surbeck, on behalf of themselves and all others similarly situated, filed their Complaint [1] against Baptist Memorial Health Care Corporation in this Court on March 26, 2018, alleging violations of the Fair Labor Standards Act. Now before the Court is the Defendant's Motion [138] for Decertification of Collective Action.

*Factual and Procedural Background*

The named Plaintiffs were formerly employed by the Defendant at its Oxford, Mississippi location from January 2015 through November 2017.[1] They operated as emergency medical teams consisting of a combination of emergency medical service drivers, emergency medical technicians, and paramedics. The Plaintiffs generally worked either two 24 -hour shifts per workweek or four 12-hour shift per workweek. Regardless of the specific shifts the Plaintiffs worked, they allege that the Defendant failed to compensate them for the total 48 hours worked each week. Therefore, they argue that they were not properly paid for the overtime hours they worked during the relevant time period, allegedly in violation of the FLSA.[2]

---

[1] The Plaintiffs' employment ended once the Defendant began contracting with a third party to obtain the services previously provided by the Plaintiffs.

[2] The backpay calculations will differ for each Plaintiff only because of the specific schedules and hours worked, the amount of any other overtime compensation the Defendant has paid, and the regular rate and overtime pay for the Plaintiffs. The Plaintiffs include the following information in their Complaint [1]:

On April 5, 2018, the Plaintiffs filed a Motion [6] for conditional certification of the collective action, asserting that the Defendant maintains an unlawful policy of refusing to compensate the Plaintiffs for certain overtime hours unless the Plaintiffs show they were out on a call, in the ambulance, or performing some other job duty described by the Defendant because the Defendant characterizes the unpaid hours as "down time." The Plaintiffs claim they were often discouraged from challenging or requesting the payment of certain hours. On February 27, 2019, this Court entered an Order [41] conditionally certifying this case as a collective action. The Court then entered a supplemental Order [48] approving the Plaintiffs' notice form and allowing them to notify potential opt-in Plaintiffs. The docket reflects that 42 opt-in Plaintiffs were then found at the Defendant's Oxford, New Albany, Calhoun City, and Columbus locations. Through the present Motion [138], the Defendant seeks to have the conditional class decertified, specifically requesting that this Court find that the Plaintiffs are not similarly situated and that the Defendant's defenses to the claims asserted would require significant individual inquiry.

*Analysis and Discussion*

Under § 207(a) of the FLSA, covered employers are required to pay nonexempt employees an overtime rate of one and one-half times their regular pay rate for hours worked over forty hours in a workweek. 29 U.S.C. § 207(a).[3] "29 U.S.C. § 201 *et seq*., provides that an employee may bring an action to recover damages for specified violations of the Act on behalf of himself and other 'similarly situated' employees." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69, 133 S. Ct. 1523, 185 L. Ed. 2d 636 (2013). The Fifth Circuit has declined to set a standard for certifying a

Christopher Ellis was employed as an emergency medical technician for five years with an hourly rate of $12.50 per hour. Robert Schmitz was employed as a paramedic for five years with an hourly rate of $23.22 per hour. Gregory Surbeck was employed as a paramedic for three years with an hourly rate of $16.97 per hour.

[3] The Defendant filed a separate Motion [140] for Summary Judgment arguing that it is an employer under the Motor Carrier Act as opposed to the FLSA. This Court has addressed that issue at length in a separate Order and Memorandum Opinion [159] denying the Defendant's request for summary judgment.

collective action and has recently rejected the *Lusardi* approach for such analysis. *Swales v. KLLM Transport Services, LLC*, 2021 WL 98229 at *1 (5th Cir. Jan. 12, 2021) (citing *Lusardi v. Xerox Corp.*, 118 F. R. D. 351 (D.N.J. 1987)).[4] Specifically, *Lusardi* advises a two-step certification analysis: (1) the notice stage and (2) the merits, or "opt in," stage.[5] This Court previously analyzed the first prong at length in its Order [41] conditionally certifying the class action. The Court sees no need to repeat that analysis here but will instead turn to the second step of the analysis.

"At the second step, or final stage, '[p]laintiffs seeking to maintain an opt-in class action bear the burden to show that they are similarly situated with respect to their job requirements and pay provisions.'" *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 892 (N.D. Iowa 2008) (quoting *Kautsch v. Premier Communications*, 2008 WL 294271 at *2 (W.D. Mo. Jan. 31, 2008) (internal citation omitted)). "Although the plaintiff's burden at this final stage is more strict than at the notice stage, the plaintiff need not show that opt in plaintiffs are 'identically situated.'" *Id.* (quoting *Fast v. Applebee's International, Inc.*, 243 F.R.D. 360, 363 (W.D. Mo. 2007)).

Courts consider three factors when determining whether putative class members are similarly situated: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Burke v. Management and Training Corp.*, 2018 WL

---

[4] In its analysis, the *Swales* court focused on the notice stage of collective action proceedings and specifically determined that "a district court must rigorously scrutinize the realm of 'similarly situated' workers, and must do so from the outset of the case, not after a lenient, step-one 'conditional certification.'" *Swales*, 2021 WL 98229 at *2. The case at hand, however, is past the notice stage in the proceedings, all opt-in Plaintiffs have been identified, parties have conducted discovery, and the Court is now ready to rule on whether any collective action shall continue. This Court therefore, does not have the same focus as that in the *Swales* case – the notice stage proceeding analysis in a collective action case – but this Court has nevertheless incorporated the *Swales* court's guidance as to approaching the information presented from discovery throughout this Order.

[5] "The merits stage typically occurs after discovery is mostly complete and upon motion by the defendant." *Santinac v. Worldwide Labor Support of Illinois, Inc.*, 107 F. Supp. 3d 610, 615 (S.D. Miss. 2015) (quoting *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 995 (E.D. Tex. 2011)).

4038115 at *2 (N.D. Miss. Aug. 23, 2018) (quoting *Rousell v. Brinker International, Inc.*, 441 Fed. Appx. 222, 226 (5th Cir. 2011)). "These factors, however, are not mutually exclusive, and there is considerable overlap among them." *Id.* (citing *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 574 (E.D. La. 2008)).

Although the above factors are the predominant factors in the decertification analysis, the district court must weigh those factors considering "the fundamental purpose of 29 U.S.C. § 216(b): (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity." *Bouaphakeo*, 564 F. Supp. 2d at 892-93 (quoting *Kautsch*, 2008 WL 294271 at *2 (internal quotations omitted)). Since "at the second step, the court has much more information and is in a position to 'make a factual determination on the similarly situated question,'… 'plaintiffs must clear a higher hurdle to continue.'" *Id.* at 893 (quoting *Mooney v. Aramco Services, Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995); *Frank v. Gold'n Plump Poultry, Inc.*, 2007 WL 2780504 at *3 (D. Minn. Sept. 24, 2007)). "The 'stricter post-discovery standard' requires plaintiffs to convince the court that the factual record reveals putative plaintiffs are still similarly situated to existing plaintiffs." *Id.* (quoting *Smith v. Heartland Automotive Services, Inc.*, 404 F. Supp. 2d 1144, 1149 (D. Minn. Dec. 12, 2005)). Just as with the first step of this analysis, however, the Plaintiffs do not have to prove the merits of their claim during this second step. *Id.*

As noted above, the three main factors to consider in this analysis are "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Burke*, 2018 WL 4038115 at *2 (quoting *Rousell*, 441 Fed. Appx. at 226). The Court will address each of these factors in turn while also considering whether certification would lower the Plaintiffs' costs and efficiently resolve "common issues of law and fact that arose from

4

the same alleged activity." *Bouaphakeo*, 564 F. Supp. 2d at 892-93 (quoting *Kautsch*, 2008 WL 294271 at *2 (internal quotations omitted)).

    i.    *Disparate factual and employment settings of the individual Plaintiffs*

The Defendant argues that, while the Plaintiffs attempt to connect their factual and employment settings by simply suing one parent corporation, in reality, the Plaintiffs worked for four different employers, worked at four different locations, and had separate supervision. Additionally, the Defendant contends that the employment practices varied at each location, thus furthering the Plaintiffs' factual differences. For example, the Defendant argues that each location had its own methods for time reporting and time management, both of which changed over the time period relevant to this case. Ultimately, the Defendant asserts that these differences would lead to multiple "mini trials" to address the individual Plaintiffs' circumstances throughout a main trial should the class be certified.

The Plaintiffs, however, argue that the factual circumstances regarding each hospital's management and operational structures were not as disparate and individualized as the Defendant asserts. For example, the Plaintiffs aver that the Defendant did not merely own the hospitals; rather, the Defendant and the subsidiary hospitals have a contractual agreement outlining how the Defendant manages the subsidiary hospitals, including compliance, human resources, legal, and payroll and benefits. Further, the Plaintiffs argue that the Defendant represented to the Plaintiffs and other hospital employees in many ways that it was their employer such as through compliance, employee handbooks, paycheck stubs, policies, and W-2s.

In *Roussell*, the Fifth Circuit upheld a district court's decision to certify a collective action, albeit after significantly decreasing the size of the class, in an action between waiters and waitresses and their chain restaurant employer. *Roussell*, 441 Fed. Appx. 222. The employees in that case brought an action under the FLSA claiming their employer improperly required them to split their

tips with "quality assurance" workers who did not otherwise receive tips. *Id.* at 224-25. The defendant deposed over fifty plaintiffs and the parties otherwise deposed close to 100 other individuals during discovery, but the court found the question of coercion, one of the particular issues in that case, to be too individualized for one case. *Id.* at 225. As a result, the court decertified the collective action as it pertained to the 3,556-member class but maintained the class of 55 plaintiffs who had been deposed, finding that they were similarly situated. *Id.*

In that case, the court reasoned that the defendant "exaggerates the factual differences among employees on various shifts and in different departments. If one zooms in close enough on anything, differences will abound; … but plaintiffs' claims need to be considered at a higher level of abstraction." *Id*. at 226 (quoting *Frank*, 2007 WL 2780504 at *4). "There is need for care in evaluating distinctions among employees, but those distinctions must make a difference relevant to the legal issues presented." *Id*. at 226-27. The court further explained that "the plaintiffs claim [the defendant] was allowed to call witnesses to rebut the evidence as to all 55 plaintiffs, ensuring that the plaintiffs could not bury bad facts with the non-testifying plaintiffs." *Id*. at 227. Additionally, the plaintiffs asserted "that after both sides presented their cases, the jury had heard evidence [from] about 25 of the 55 plaintiffs, or 45 percent, and the court considered evidence on the remainder." *Id*. Ultimately, the court held that a jury in that case was sufficiently informed after hearing evidence from 45 percent of the plaintiffs. *Id*.

In the case at hand, there are three named Plaintiffs and 42 opt-in Plaintiffs. The Defendant has had the opportunity to depose the named Plaintiffs as well as some of the opt-in Plaintiffs. In these depositions, the Plaintiffs state their job duties and the standards implemented at their respective hospitals regarding payment for down time and meal breaks. For example, those deposed mentioned helping in the emergency room while at the hospitals, transporting patients, and going to accident scenes. Additionally, the Plaintiffs discussed having exception logs, how they were told to

use them, and how they used them to keep track of their time at their respective hospitals. The Plaintiffs also explained how they were paid, either for the full 24 hours, 21 out of the 24 hours, or 19 out of the 24 hours when working a 24-hour shift. The Plaintiffs also explained whether they questioned their supervisors about their payment structure and why they were not compensated for certain hours. While their job titles or descriptions might not have been identical, these depositions indicate that their job similarities were enough to warrant simultaneous consideration. For example, some Plaintiffs drove ambulances, others worked in the back of the ambulances, and many indicated helping in other areas of the hospitals when not on calls. Therefore, this Court is of the opinion that the Plaintiffs' job descriptions and experiences with exception logs and other payment practices, while not identical, are not so disparate as to warrant the relief the Defendant requests.

While the Defendant asserts that factual discrepancies abound on an individual basis, such as whether employees used exception logs to track their time and how many hours each employee was paid per shift, the Plaintiffs argue that such inquiries are hospital-specific as opposed to individual-specific. The Plaintiffs do not dispute the fact that some of them kept track of their down time in ways that other Plaintiffs did not, but they argue that payroll and exception log practices were still consistent for the Plaintiffs at each particular hospital. Therefore, while these practices might have differed across the Plaintiff pool, the Plaintiffs argue that these practices did not change by the individual but rather changed by the hospital at which they worked. Therefore, this Court agrees that, at most, the fact finder in this case would be required to consider varying information from the four hospital locations involved in this case but would not have to look at more than 45 various factual scenarios from each Plaintiff. Looking at this case, even on a hospital-by-hospital basis would not be so burdensome as to require decertification. Further, the Plaintiffs also assert, and this Court finds telling, that the Defendant has already produced the payroll evidence necessary to address the issue of non-payment during the discovery phase of this case. Therefore, this Court

is of the opinion that any evidence needed to address these arguments must not be so burdensome as to require individual cases for each Plaintiff because the Defendant has already been able to produce the pertinent information.

Considering the Court's responsibility to also give consideration to "(1) [lowering] costs to the plaintiffs through the pooling of resources; and (2) [limiting] the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity," the Court finds that the Plaintiffs' factual and employment settings present enough similarities to warrant certification of the collective action. *Bouaphakeo*, 564 F. Supp. 2d at 892-93 (quoting *Kautsch*, 2008 WL 294271 at *2 (internal quotations omitted)). As a result, the Court will next address the second prong of the certification analysis: whether the Defendant's defenses require significant individual inquiry.

    ii.    *Various defenses available to the Defendant which appear to be individual to each Plaintiff*

The Defendant raises a number of defenses which it argues would require individualized inquiry and would therefore be inappropriate to be considered in one collective action. Specifically, the Defendant raises defenses that each putative class members' down time was not compensable. Additionally, the Defendant argues that any uncompensated time was permissible as an uncompensated meal break. The Defendant also lists a number of sub-issues that, it argues, will likewise require individual inquiry such as: whether each class member expressly or impliedly agreed to the terms of payment; was not provided adequate sleeping facilities; was interrupted on less than half of his or her shifts; correctly reported work during his or her down time periods; and opposed the terms on which he or she was paid. Additionally, the Defendant argues that it will need to look at the differences in the management and administration of down time, including the timing of the down time, tracking down time, and the amount of down time the Plaintiffs had.

8

The Plaintiffs respond by arguing that leaving the Plaintiffs' down time and meal breaks uncompensated was not proper under the law. It should be noted that neither the applicability of the sleep/rest or meal break doctrines nor the factual findings of any of the questions listed above are appropriate questions before the Court at this stage in the proceedings. However, this Court does not intend to completely disregard the evidence pertaining to these arguments. Evidence from the "similarly situated" analysis can be applicable in both determining whether opt-in Plaintiffs were properly notified as well as in deciding the merits of the case. *See Swales*, 2021 WL 98229 at *8 ("These facts affect whether all of [the defendant's] independent contractors can be grouped together for purposes of (later) determining the level of control [the defendant] exercised over their work. The same facts will also be relevant when (later) deciding the ultimate merits issues. And that's okay. In other words, the same evidence will often serve two purposes, and the district court need not ignore that evidence to avoid using it for the wrong purpose.") Here, this Court is concerned with whether the inquiry into the applicability of the sleep/rest and meal break doctrines would be so individualized as to necessitate decertification of the collective action. Therefore, this Court will address the evidence tied to those questions to the extent that the evidence shows how extensive the individual inquiry will be. The regulation for down time compensation reads as follows:

> Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked.

> If the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked. If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted. For enforcement purposes, the Divisions have adopted the rule that if the employee cannot get at least

> 5 hours' sleep during the scheduled period the entire time is working time.

29 C.F.R. § 785.22(a), (b). Similarly, the regulation for meal time compensation reads as follows:

> Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.
>
> It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period.

29 C.F.R. § 785.19(a), (b). The most compelling defense the Defendant makes is that the sleep/down time was not compensable because the Plaintiffs either expressly or impliedly agreed to the exclusion. Under the sleep/rest doctrine, an employee can expressly or impliedly accept the exclusion of sleep time. *See Ellis v. Viking Enterprises, Inc.*, 2019 WL 6271784 at *3 (W.D. Tex. Nov. 22, 2019) (slip copy) ("Courts look for either an express or implied agreement regarding the exclusion of sleep time.") (citing *Alvarez v. Amb-Trans Inc.*, 2012 WL 4103876 at *8 (W.D. Tex. Sept. 17, 2012)). It is the Plaintiffs' burden to show that there was no agreement allowing such hours to be uncompensated. *Id*. (internal citation omitted). The Defendant argues that some of the Plaintiffs admitted to continuing work despite their knowledge of the pay structure, and thus impliedly accepted the pay structure. Therefore, the Defendant argues that whether the defense applies requires extensive individual inquiry so as to warrant separate trials.

In *Alvarez*, the plaintiffs brought the suit on behalf of themselves and all others similarly situated against their employer, Amb-Trans, Inc., as well as other individuals in their official and individual capacities. *Alvarez*, 2012 WL 4103876 at *1. The plaintiffs in that case did not file a

timely motion for collective action and were therefore unable to notify potential class members. *Id.* at *9. Although the case did not proceed as a collective action, the Southern District of Texas still analyzed issues in that case that are similar to the issues here. For example, the court had to determine whether the three plaintiffs had expressly or impliedly agreed to exclude their sleep/rest hours from their compensated hours. *Id.* at *8. In so considering, the court looked to the record, specifically to the plaintiffs' deposition testimonies and one of the supervisor's testimony. *Id.*

Again, while this Court will not address whether an express or implied agreement was made at this time, it must consider whether the applicable evidence would be so individualized as to necessitate separate trials. Although recognizing that some individual inquiry might be necessary, following the court's approach in *Alvarez*, this Court reasons that even if individual inquiry is necessary, it is not so burdensome as to require decertification and individual trials. In fact, it would be more burdensome to require each Plaintiff to bring individual cases for this one defense. The docket reflects that the total amount of Plaintiffs is 45 individuals, and the Defendant has submitted deposition testimony from a number of Plaintiffs already in which they address this issue. As such, the Court finds that just as the parties in *Alvarez* relied on the deposition testimony of the parties to determine whether there was an agreement regarding the sleep/rest time, so too can the parties in this case efficiently and reasonably rely on the deposition testimony in the record without having to address the issue in separate trials.

iii.     *Fairness and procedural considerations*

In this prong of the analysis, the Court must evaluate "'whether it can analyze the opt-in class with a "broad scale approach,"'" keeping in mind the primary objectives of a collective action under § 216(b): (1) to lower the costs to plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity." *Johnson v. TGF Precision Haircutters, Inc.*, 2005 WL

1994286 at *7 (S.D. Tex. Aug. 17, 2005) (internal citations omitted). Additionally, this Court must "determine whether it can coherently manage the class in a manner that will not prejudice any party." *Id*. (internal citations omitted). The Court finds that fairness and procedural considerations support certification of the class. Specifically, certifying this class would both lower the costs to the Plaintiffs and be the most efficient means of litigation, as holding separate trials for each Plaintiff would create a significant financial burden. As the Court determined in the first two prongs, the Plaintiffs in this case are similarly situated, the Defendant's defenses do not require significant individual proof as the defenses can be considered on a hospital-by-hospital basis, and the issues are common issues of law and fact. Any discrepancies in the cases are not so significant as to warrant separate trials.

*Conclusion*

For the reasons fully discussed above, the Defendant's Motion for Decertification of the Collective Action [138] is DENIED. It is SO ORDERED on this 27th day of January, 2021.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE