**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

CHRISTOPHER ELLIS, ROBERT L.       PLAINTIFFS
SCHMITZ, AND GREGORY SURBECK,
on behalf of themselves and others
similarly-situated,

v.             Case No. 3:18-cv-00073-SA-JMV

BAPTIST MEMORIAL HEALTH CARE
CORPORATION          DEFENDANT

## MEMORANDUM IN SUPPORT OF JOINT MOTION
## FOR APPROVAL OF FLSA SETTLEMENT

Following arms-length negotiations and the exchange of detailed information relevant to the parties' respective claims and defenses, Plaintiffs Christopher Ellis, Robert L. Schmitz, and Gregory Surbeck (the "Named Plaintiffs") and Defendant Baptist Memorial Health Care Corporation ("BMHCC" or "Defendant") (collectively "the Parties") have reached a proposed settlement in the above-captioned case. The Parties respectfully request that the Court approve their proposed settlement of this Fair Labor Standards Act ("FLSA") collective action seeking overtime compensation and dismiss this case with prejudice. As fully set forth below, the parties' settlement is a fair, adequate, and reasonable resolution of the Parties' *bona fide* dispute as to liability and damages under the FLSA and appropriately balances the viability of Plaintiff's claims and the risks inherent in further litigation in light of the defenses asserted by BMHCC, while also accounting for a reasonable award of attorneys' fees and costs. Accordingly, the Parties respectfully request the Court's approval of their proposed settlement of the Plaintiffs' FLSA claims.

I.      **PROCEDURAL AND FACTUAL BACKGROUND**

On March 26, 2018, the Named Plaintiffs filed suit, on behalf of themselves and others allegedly similarly-situated, alleging that they are owed overtime compensation under the Fair labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"). Specifically, the Named Plaintiffs alleged in their Amended Complaint that they and others similarly-situated generally worked two 24-hour shifts or four 12-hour shifts per workweek, that they were subject to a deduction of 3 hours per 24-hour shift and a half hour per 12-hour shift, and that they were not paid for all of their overtime hours as a result. *See* Doc. 12, Amended Complaint, at ¶ 18.

The Named Plaintiffs previously moved the Court to certify this action as a collective action and, on February 27, 2019, the Court conditionally certified a class comprised of "emergency medical service drivers, emergency medical technicians, or paramedics at [Defendant's] Oxford, New Albany, Calhoun City, or Columbus locations." *See* Doc. 41. On September 28, 2020, BMHCC filed separate motions for Decertification and for Summary Judgment. *See* Docs. 138 and 140. The Court denied both Motions by separate orders dated January 27, 2021. *See* Docs. 159 and 160. On February 4, 2021, BMHCC filed a motion, pursuant to 28 U.S.C. § 1292(b), seeking permission to take an interlocutory appeal from the Court's Order denying its Motion for Summary Judgment. *See* Doc. 163. That motion is currently pending before the Court.

Following a settlement conference in which the parties engaged in extensive settlement discussion and negotiation with and through Magistrate Judge Virden, the parties reached an agreement, in principle, to settle and fully resolve the Plaintiffs' claims in this case on February 20, 2021.

Since reaching an agreement in principle, the parties have worked together to craft a settlement agreement addressing the administration of the payment of back wages; payment of Plaintiffs' attorney fees, costs and expenses; and execution of individual release agreements and receipt by BMHCC of IRS forms W-4 or W-9 for the applicable payments. Based on their knowledge of the Plaintiffs' claims and BMHCC's defenses, counsel for the Parties concur that the settlement is fair and reasonable under the circumstances. In support of their Joint Motion, the Parties are submitting their proposed Settlement Agreement for *in camera* review by the Court jointly representing that it will be finalized and fully-executed upon this Court's approval.

## II.    LAW AND ANALYSIS

### A.    The Need for Approval of Settlement of FLSA Collective Actions

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). FLSA claims may be compromised after the court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Villeda v. Landry's Rests., Inc.,* No. H–08–2287, 2009 WL 3233405, at *1 (S.D. Tex. Oct. 7, 2009) (citing *Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor,* 679 F.2d 1350, 1353 (11th Cir. 1982)).

There is conflicting authority regarding whether such claims may be settled in the absence of Court approval. As the Seventh Circuit stated, the FLSA is "designed to prevent consenting adults from transacting about minimum wages and overtime pay." *Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). The Seventh Circuit maintains that because the FLSA "makes it impossible to agree on the amount of pay, it is necessary to ban private settlements of disputes about pay." *Id.* "Otherwise the parties' ability to settle disputes would allow them to

establish sub-minimum wages." *Id.* "Courts therefore have refused to enforce wholly private settlements." *Id.*

The Fifth Circuit, however, has enforced a private confidential compromise of an FLSA claim negotiated between an employer and employees even in the absence of court approval, where there existed "a bona fide dispute as to liability" as to the amount of hours worked and the compensation due. *See Martin v. Spring Break '83 Production*, 688 F.3d 247, 255 (5th Cir. 2012).

Given the conflicting authority on this issue, and out of an abundance of caution, the Parties request Court approval of the Settlement Agreement. Although the Parties have decidedly different views of the merits of the litigation, all agree the Settlement Agreement is fair, reasonable, and represents a reasonable compromise of the disputed issues in this case.

The Parties also jointly request the Court review the Settlement Agreement *in camera.* There is no provision in the FLSA that requires Court approval or public approval of the settlement of a disputed FSLA claim. *See Martin v. Spring Break '83 Production*, 688 F.3d 247, 255 (5th Cir. 2012). Similarly, there is no requirement that a settlement be made part of the Court's record. *See Almodova v. City & Cnty. of Honolulu*, No. 07-00378, 2010 U.S. Dist. LEXIS 33199 at *13 (D. Hawaii. Mar. 31, 2010); *Trinh v. J.P. Morgan Chase & Co,* No. 07-CV-01666-W-WMC 2009 U.S. Dist. LEXIS 16477 at *1 (S.D. Cal. Mar. 3, 2009); *Agui v. T-Mobile USA, Inc*., No. 09-CV-02933-RJD-RML (E.D.N.Y. May 4, 2010). In this case, the individual opt in plaintiffs are entitled to confidentiality as to the amounts they will receive in settlement and BMHCC is entitled to confidentiality as to the amounts paid to persons that it denies having employed. For this reason, the parties have specifically agreed not to publicize the terms of their settlement and any record review by the Court will frustrate that essential term of their agreement. Accordingly, *in camera* review and approval is appropriate.

4

B.     **Standard for Approval of Settlement of FLSA Collective Actions**

Employees can settle and release claims under the FLSA in two ways. First, the FLSA allows employees to settle and waive their claims if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. See 29 U.S.C. § 216(c); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Second, in the context of a private lawsuit brought by an employee against an employer under § 216(b), an employee may settle and release FLSA claims against an employer if the parties present the district court with a proposed settlement, and the district court enters a stipulated judgment approving the fairness of the settlement. *Id.*

In reviewing a settlement of a private FLSA claim, the Court must scrutinize the proposed settlement for fairness and determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc.*, 679 F.2d at 1355; *see also Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 163 (5th Cir. 2015). When it appears that a settlement "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages[] that are actually in dispute," the Court should "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354. Additionally, a court presiding over an FLSA suit "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

C.     **A *Bona Fide* Dispute Exists Over Both Liability and Damages**

In reviewing the settlement of a plaintiff's FLSA claims, the district court must "'ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and

overtime.'" *Rotuna v. W. Customer Mgmt. Grp. LLC*, No. 09-1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010). "The requirement of an adversarial posture between parties to a settlement agreement operates as a guarantee that employers cannot profit by coercing employees into waiving their rights, and then dressing that invalid waiver of the FLSA's protections as a valid settlement of a legal claim." *Sims v. Hous. Auth. of City of El Paso*, No. EP-10-CV-109-KC, 2011 WL 3862194, at \*6 (W.D. Tex. Sept. 1, 2011). "An actual dispute over the amount of overtime compensation due to an employee [can be] sufficient to create a bona fide dispute for purposes of this factor." *Shaw v. CAS, Inc.*, No. 5:17-CV-142, 2018 WL 3621050, at \*1 (S.D. Tex. Jan. 31, 2018).

A *bona fide* dispute exists in this case. First, BMHCC has asserted and continues to assert that it did not employ Plaintiffs, that it was and is instead the corporate parent of the Plaintiffs' actual employers, that it did not have the right or ability to hire or fire the Plaintiffs or to establish their compensation or any pay practice or other policy governing their employment, and that it could not be held liable to any of the Plaintiffs as a result. Second, BMHCC also has asserted and continues to assert that the Named Plaintiffs and Opt-in Plaintiffs are exempt from the FLSA's overtime requirements under the Motor Carrier Act exemption. While the Court has denied BMHCC's motion for summary judgment based on that exemption, BMHCC has requested permission to seek interlocutory appeal and, absent settlement, would continue to pursue and preserve that defense by proffer of evidence at trial and then pursue an appeal. Third, BMHCC has asserted and continues to assert that some or all of the Plaintiffs' "down time" was not compensable to the extent they agreed to the terms of payment, were interrupted on less than half of their shifts, and were provided adequate sleeping facilities, or alternatively, whether they in fact took uninterrupted meal periods. Fourth, BMHCC has asserted and continues to assert, that it had

6

reasonable grounds to believe Plaintiffs were exempt from the FLSA's overtime requirements and, therefore, that it was in full compliance with the FLSA at all times and acted in good faith and not in violation—willful or otherwise—of the FLSA at any time relevant to this action. Finally, there remains substantial dispute between the parties about whether the unpaid hours would be overtime hours and the amount, if any, of such overtime hours.

The Parties both agree that there is substantial risk for both sides. The total settlement amount reflects a reasonable compromise of the Plaintiffs' claimed damages. Although the Parties continue to firmly believe in the merits of their respective claims and defenses, given the time, expense, and risk associated with proceeding through trial and anticipated appellate proceedings, the Parties agree that a compromise is appropriate at this stage of the litigation. They desire to resolve this case by way of a negotiated settlement payment by BMHCC in exchange for release of claims by Plaintiffs to avoid the time and expense inherent in continued litigation. *See Lynn's Food Stores*, 679 F.2d at 1354 ("Thus, when the parties [to the litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.").

D.  **The Settlement is Fair and Reasonable**

"There is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, 2010 WL 1688793, at *1 (M.D. La. Apr. 26, 2010) (citing *Camp v. Progressive Corp.*, 2004 WL 2149079, at *5 (E.D. La. Sept. 23, 2004)). Additionally, the fact "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id.*

In addition to resolving a *bona fide* dispute between the Parties, the settlement achieved in this case is fair and reasonable and should be approved for at least five reasons. First, the proposed

7

settlement arises out of an action for wages brought by Plaintiffs against their alleged employer. While the amount each Plaintiff ultimately receives will depend on the number of weeks and amount of time he or she worked for BMHCC or its subsidiary hospitals during the limitations period, the amount in the Settlement Agreement is reasonable considering that: (1) Plaintiffs would face a substantial evidentiary burden at trial; (2) Plaintiffs are not highly-compensated employees; and (3) Defendant faces liability exposure and significant defense costs if this litigation continues.

Second, there was no fraud or collusion between counsel and the settlement was reached as a result of arms-length negotiations which involved experienced counsel and which occurred, during the course of a settlement conference over which Magistrate Judge Virden presided. *See Smith v. M-I, LLC*, 2019 WL 2620734, at *2 (W.D. Tex. Feb. 26, 2019) (finding settlement fair and reasonable when it was negotiated by experienced attorneys and reflected an arms'-length compromise, noting a strong presumption in favor of finding a settlement fair); *see also Cotton v. Hinton*, 559 F. 2d 1326, 1330 (5th Cir. 1977) (holding that the court is "entitled to rely upon the judgment of experienced counsel for the parties" in assessing a settlement and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel").

Third, during the litigation and settlement of this action, Plaintiffs were represented by counsel both respected in the community and experienced in handling wage and hour collective actions. Plaintiffs' counsel have the experience necessary to assess the risks of continued litigation and benefits of settlement and have done so in this action. Plaintiffs' counsel represents employees with claims against employers similar to the claims asserted in this case. Defense counsel is likewise experienced in defending similar claims. Counsel for both Parties have advised their respective clients regarding the settlement, and they have recommended judicial approval: the Court should afford weight to those recommendations. *See Liger v. New Orleans Hornets NBA*

*Ltd. P'ship*, 2009 WL 2856246, at *4 (E.D. La. Aug. 28, 2009) ("The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a . . . settlement." (internal citations omitted)); *see also Austin v. Pa. Dep't of Corrs.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class")

Fourth, the proceedings have advanced to a stage sufficient to permit the Parties and their experienced counsel to collect, obtain, and review evidence, evaluate their claims and defenses, understand the scope of potential damages, and engage in negotiations with the mutual understanding that continuing with litigation and engaging in trial and appellate practice would be a difficult, costly, and uncertain undertaking.

Fifth, the range of possible recovery in this case was uncertain. As noted above, the Parties' positions on liability and damages are divergent, and the risks of adverse outcomes to by sides, and the uncertainty of any potential recovery by Plaintiffs informed the Parties' decisions to settle and resolve the litigation.

Sixth, the complexity, expense, and likely duration of the litigation should a settlement not have been reached weighs heavily in favor of finding that this settlement is fair and reasonable. Without question, if the case had not settled, the Parties would have spent significant time and resources preparing for and trying the case. Indeed, the Parties had anticipated and planned for the potential presentation of testimony by nearly fifty witnesses. Trial would have been lengthy and expensive, and appeals and post-trial motions were nearly certain to follow. Rather than take this path, the Parties directed their efforts toward an informed and efficient resolution of Plaintiffs' claims. As the courts in this Circuit have recognized, "[c]lass action litigation is inherently complex, and complex litigation is inevitably costly in terms of both time and money." *Kemp v.*

*Unum Life Ins. Co. of Am.*, No. 14-0944, 2015 WL 8526689, at *5 (E.D. La. Dec. 11, 2015); *Slipchenko v. Brunel Energy, Inc.*, No. H-11-1465, 2015 WL 338358, at *8 (S.D. Tex. Jan. 23, 2015) (discussing complexity and expense of employment class action).

While a number of issues remain unresolved in this litigation, preparation for the Parties' settlement conference enabled counsel to assess the respective strengths and weaknesses of their case and to reach the conclusion that settlement is in the Parties' best interest. The settlement eliminates the substantial inherent risks both sides would bear if this case were to continue. Under these circumstances, the settlement is fair, reasonable, and adequate for Plaintiffs, and the Court should approve it.

Furthermore, the specific back pay settlement amounts and attorneys' fees proposed by the Parties reflect a reasonable apportionment of a settlement based on the number of workweeks worked by the Plaintiff and Opt-In Plaintiffs during the portion of the relevant limitations period in which they were employed (many of the Named and Opt-In Plaintiffs were not employed for the entire relevant time period) and takes into account the number of hours of overtime previously reported and paid and/or alleged by the Named Plaintiffs and Opt-In Plaintiffs to be due and owing. These calculations are the result of detailed work by counsel in advance of and during the course of their negotiations.

Finally, Plaintiff's Counsel's request for a 35% contingency fee is also fair and reasonable and Defendant does not oppose such an award. The Fifth Circuit recognizes that a contingency fee is desirable because it is predictable, encourages settlement, and reduces incentives for protracted litigation. *Union Asset Mgmt. v. Dell, Inc.*, 669 F.3d 632, 643–44 (5th Cir. 2012). Within the Fifth Circuit, customary contingency fees for class funds have ranged from 33.33% to 50%.

*See In re Bayou Sorrel Class Action*, No. 6:04CV1101, 2006 WL 3230771, at *1 (W.D. La. Oct. 31, 2006).

Courts in this District have awarded requests for a 40% contingency fee in similar FLSA cases. *See, e.g.*, *Villarreal, et al. v. Source Refrigeration & HVAC, Inc.*; No. 1:12-cv-00243 (W.D. Tex. Oct. 8, 2013), ECF No. 71 (approving 40% contingency fee in FLSA collective action); *Covey, et al. v. Iron Cactus, et al.*; No. 1:12-cv-00111-SS (W.D. Tex. August 6, 2013) (approving 40% contingency fee in FLSA collective action). Such a request falls within the "customary contingency" range in the Fifth Circuit of 35% to 40%. *See id.*; *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (awarding a 40% contingency fee award in an FLSA matter); *Wolfe v. Anchor Drilling Fluids USA, Inc.*, No. 4:15-cv-1344 (S.D. Tex. Dec. 7, 2015) (same); *Heffernan Bryant v. United Furniture Indus., Inc.*, No. 1:13CV246-SA-DAS, 2017 WL 639320, at *5 (N.D. Miss. Feb. 16, 2017) (same).

Here, the parties proposed settlement is based on the following assumptions that led to the compromise: (1) although there is substantial dispute about the hours claimed and about liability, the Named Plaintiffs and Opt-in Plaintiffs will be paid for all hours that they claim to have been inappropriately deducted from their shifts; (2) Named Plaintiffs and Opt-in Plaintiffs will compromise their claim for liquidated damages in light of the possibility of a defense (or substantially reduced verdict) and the fact that BMHCC has asserted a good faith basis for the pay practice making an award liquidated damages unlikely; (3) Counsel for plaintiffs is entitled to an attorney fee based on a reasonable load star amount. The Parties have exchanged sufficient information to allow each to evaluate these assumptions as they reached as agreement to settle this dispute. Both parties recognized that BMHCC could prevail based on its defenses and that Plaintiffs could recover nothing and, alternatively, that Plaintiffs could prevail and recover both

unpaid overtime pay plus liquidated damages and attorneys' fees. The resulting compromise is fair and reasonable given the respective risks. The calculation of hours for purpose of reaching the individual awards was made by counsel for Plaintiffs and reviewed and agreed by counsel for BMHCC.

### III.    CONCLUSION

This FLSA collective action settlement is a product of an arms-length negotiation between counsel and it resolves a *bona fide* dispute over Plaintiffs' FLSA claims. The settlement is fair and reasonable and provides Plaintiffs with significant monetary relief. Accordingly, the Parties jointly and respectfully request that this Court review the proposed settlement *in camera* and approve the Parties' settlement agreement and the distribution of the settlement amount to Plaintiffs in full as described above and as set forth in the attached Settlement Agreement. Furthermore, the Parties jointly request that the Court award as reasonable the attorneys' fees and litigation costs in the amount requested in the Settlement Agreement. Finally, the Parties jointly request that this action be dismissed with prejudice upon the Court's entry of an order approving the settlement.

Respectfully submitted,

*/s/ James D. Harper (with permission)*
James D. Harper (MS Bar No. 99386)
Harper Little, PLLC
800 College Hill Road, Suite 5201
P.O. Box 3150
Oxford, MS 38655
Telephone: (662) 234-0320
Facsimile (662) 259-8464
Email: james@harperlittlelaw.com

Counsel for Plaintiffs

_/s/ Matthew G. Gallagher_
Matthew G. Gallagher (MS Bar No. 103159)
Littler Mendelson, P.C.
3725 Champion Hills Drive, Suite 3000
Memphis, TN 38125
Telephone: (901) 795-6695
Email: mgallagher@littler.com

Counsel for Defendant

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Memorandum has been served via the Court's electronic case filing system on this, the 19th day of March, 2021, upon the following:

James D. Harper
Harper Little, PLLC
800 College Hill Road, Suite 5201
P.O. Box 3150
Oxford, MS 38655
Telephone: (662) 234-0320
Facsimile (662) 259-8464
Email: james@harperlittlelaw.com

*/s/ Matthew G. Gallagher*

14